BOLIN, Judge.
By this tort action Walter F. Peterson ■seeks damages for personal injuries allegedly resulting from a head-on collision between a loaded pulpwood truck owned by Adell Amos, driven by Huey Lee Holmes, and a pickup truck owned and ■operated by Peterson. At the time of the accident Holmes was driving the pulpwood truck to the Continental Can Company, Inc. paper mill at Hodge, Louisiana. Amos was a pulpwood producer for Joe D. Burns, president of Burns Forest Products, Inc. Following a lengthy jury trial verdict was rendered in favor of plaintiff and against Huey Lee Plolmes, Adell Amos, Burns Forest Products, Inc., Joe D. Burns, individually and Continental Can Company, Inc., in solido in the aggregate sum of $75,000. Amos had $5,000 liability insurance on his truck which sum was deposited in the registry of the court by his insurer. Since the trial in the lower court Plolmes has died. Neither Amos nor the heirs of Holmes have appealed so the judgment as to them has become final. The case is before this court on appeal by Joe D. Burns, Burns Forest Products, Inc., and Continental Can Company, Inc.
It is undisputed in this court the accident was caused by the fault or negligence of Holmes, driver of the pulpwood truck and, other than quantum, the sole issue presented is the question upon whom falls the legal responsibility for such tort.
Counsel ably represented their clients in the lower court and in oral argument and brief before this court. In their zeal they have left no question unexplored or undeveloped. Both have brought to our attention the fact the case consumed a week and was tried before a civil jury. We feel compelled to comment that this fact neither detracts nor adds to • the ultimate disposition of the case on ap- ■ peal since trial by jury in civil cases is : a substantive right of a litigant. (La. Const. Art. 7, Sec. 41; La.C.C.P. Art. 1731 et seq.) On the other hand, Louisiana Constitution Article VII, Sections 10 and 29 provide that appellate courts shall' review both the law and facts. It should be pointed out that a jury does not assign written reasons for its verdict, therefore, from a practical viewpoint we are in the same situation in this case as if the decision had been rendered by a trial judge without assigning written reasons. Since we have no way of knowing upon what the finding of the jury was predicated, ■ we shall state the facts as we find them ■’ from our own review of the record.
Continental Can Company owns, or has under long-term lease, several hundred thousand acres of land which it utilizes for the growing and harvesting of timber. Originally Continental employed its own crew to cut and haul timber from its lands to its paper mill for processing. However, a number of years preceding the accident forming the basis of this suit, Continental changed its policy and harvested its wood through “dealers” who were shown by the company’s forester which wood was selected for cutting. At the time of this suit there were two dealers who were assigned geographical areas within which they were to secure pulpwood. One of these areas, encompassing lands both within and without that owned by Continental, was assigned to Burns Forest Products, Inc. who was obligated to cut and remove only those' trees from company land which had been marked in compliance with the general forestry policies of the company. Bums in turn selected “producers”, who owned the pulpwood trucks, hired their employees and cut and hauled the wood, some to Continental and! some to other companies.
*173 Burns is engaged in the business of buying and selling timber including pulpwood, logs, poles, piling, etc. The largest volume of his business involves the production and sale of pulpwood. Approximately 60% of the timber processed by Burns is obtained from lands leased by Continental Can and approximately 95% of the pulpwood so obtained is sold to Continental. Saw logs, no matter from whose land they come, are usually sold to other companies. Mr. Burns admits Continental is his best customer. His legal relationship with Continental was evidenced in part by two written instruments, the first of which was designated a “Pulpwood Sales Agreement” covering all the pulpwood on Continental’s land within a certain designated area that might be marked for cutting by Continental’s forester. This agreement is made part of the record and plaintiff contends it was prepared in an effort to render the relationship between Burns and Continental that of “vendor-vendee.”
The second instrument was a “Pulpwood Purchase Order” which was normally a weekly communication to the “dealer” from Continental advising how many cords of wood the company would buy from him during a specified period. For reasons hereinafter expressed we deem it unnecessary to define the nature of the legal relationship between Burns and Continental
Burns ordered his pulpwood from Amos by means of a written “Pulpwood Purchase Order” almost identical in form and content to the one executed between Burns and Continental and for the week in question he ordered from Amos a total of 74 cords of pulpwood
Amos owned two pulpwood trucks, power saws and other equipment necessary for the harvesting of pulpwood and hired his own employees including Holmes. The Ford dealer at Jonesboro testified he had sold Amos all his pulpwood trucks over a period of years; that he conducted these negotiations with Amos independently of anyone; that Amos usually paid him on a weekly basis. Amos testified, without contradiction, that he withheld social security, employment compensation premiums, etc. from his employees and filed these reports in his own name with the assistance of a person employed by him who had no connection directly or indirectly with Burns or Continental Can Company.
We, therefore, find that, at the time of plaintiff’s injuries, Amos was cutting wood from Continental’s land; that the only control Burns had over Amos with regard to timber cutting was to see that Amos cut the timber according to the standards of length and dimension specified by Continental Can in order to carry out the company’s program for good forestry management. It was understood Amos would see that his cutters and haulers would not unduly damage other trees belonging to Continental while cutting and removing timber.
The first question to be determined is whether Amos was an independent contractor or an employee of Burns and until this question is answered the nature of Burns’ relationship to Continental Can is of no importance.
The basic law for all tort liability in Louisiana is Article 2315 of the Louisiana Civil Code which provides:
“Every act whatever of man that causes damage to another, obliges him by whose fault it happened to repair it; * * * ”
Other relevant articles of the Louisiana Civil Code are:
Art. 2317:
“We are responsible, not only for the damage occasioned by our own act, but for that which is caused by the act of persons for whom we are answerable, or of the things which we have in our custody * * * ”
*174 Art. 2320:
“Masters and employers are answerable for the damage occasioned by their servants and overseers, in the exercise of the functions in which they are employed.”
* * * * * *
The question of determining whether in a particular case the relationship is that of master and servant or independent contractor has been before our courts on many occasions. However, since the passage of Louisiana Revised Statutes 23:1061 this problem no longer arises in Workmen’s Compensation cases. We think the following tort cases adequately discuss the problem and are analogous to the instant case: Amyx v. Henry & Hall, 227 La. 364, 79 So.2d 483 (1955); Malloy v. Buckner-Harmon Wood Contractors (La.App. 2 Cir. 1958) 100 So.2d 242 (cert. denied); Suckle v. Hartford Accident & Indemnity Co. (La.App. 2 Cir. 1964) 163 So.2d 564 (writs denied).
In the Amyx case one Guin was held to be the employee of a partnership of Henry & Hall thus obligating that partnership, as his employer, to respond in damages for a tort committed by him. At the time of the accident Guin owned the truck he was driving jointly with another and had orally agreed with the defendant partnership to haul gravel at a rate of $2.00 per cubic yard. There was no agreement specifying the number of cubic yards of gravel Guin would haul nor was he obligated to complete hauling any specific quantity. The partnership supervised the quality and quantity of gravel to be loaded and gave Guin specific instructions concerning the destination' and even the route to follow in hauling it. Guin was carried on a weekly payroll but the partnership was not obligated to keep the services of Guin until he had finished any certain amount of work or for any definite time.
The instant case is distinguishable from the Amyx case in that Burns and Amos had contracted for the delivery of a specified amount of pulpwood during a specified period of time. Burns was obligated to receive and Amos to deliver 62 cords of pine pulpwood during the period of June 8 to June 12 and twelve cords of hardwood on June 10. Amos used his. own equipment in loading the pulpwood truck and Burns neither supervised the quality or quantity of pulpwood to be-loaded nor did he give directions regarding the route to be followed. Amos was not carried on the payroll nor was liability insurance afforded Amos by Burns. The contract which was filed in the record was for a specified quantity at a price “agreed upon” and within a particular period of time. As previously pointed out, Bums did require that Amos comply with specifications and regulations as a prerequisite to the continuance of their contractual, relationship.
The Malloy case arose out of the negligent act of an employee, Calvin Morgan. Morgan was employed by Cedric Burns, a pulpwood producer, who owned several trucks and who was producing pulpwood' through some 16 employees under an oral agreement with the Buckner-Harmon partnership. The court held Cedric Burns-was not an independent contractor but was the servant of Buckner-Harmon Wood Contractors so as to make the latter answerable in tort for negligent acts of the employee, Calvin Morgan. Although Burns produced pulpwood at a specified rate per cord, his operations were subject to supervision and direction by members of the partnership; bookkeeping details were-kept by Buckner-Harmon and social security payments, compensation insurance premiums and weekly charges for the expense of keeping books were charged against Burns’ weekly compensation at the stipulated price computed on the tallies-of wood deliveries to the railway cars. When Burns was paid each week Buckner-Harmon deducted not only the charges-enumerated above but also his indebted-nesses for gasoline, repairs or supplies- *175 incurred at various filling stations, garage and saw companies. Numerous rules were mentioned by the court including the “actual control” test, “the right of control” and the “supervision test” and the ultimate distinction between “supervision as to result” and “supervision as to method.” The court found that no true independent ■contractual relationship existed between Buckner-Harmon partnership and Cedric Burns.
Suckle v. Hartford Accident, the most recent case decided by this court touching upon the issue before us, involved a dump truck owned by Curtis Williams and operated by Sam James. Plaintiff contended O’Neal and Hot Mix Corporation, as employers, were liable for the tort allegedly committed by the driver, James. Williams, who in addition to his regular employment as foreman for O’Neal and Hot Mix, rented his dump truck to Hot Mix and O’Neal with whom he had contracted to haul asphalt to a company job in Shreveport. It was orally agreed he was to be paid on an hourly basis for the use of his truck and driver. Williams was instructed by an official of Hot Mix or O’Neal to have his truck go to another job location and move a large portable roller. After moving the roller and while James was returning the dump truck to its usual place for the night the accident occurred. This court, citing the Amyx and Malloy cases, concluded Williams was engaged as an independent contractor since, at the time of the accident, neither O’Neal nor Hot Mix were exercising direction or control over the truck and consequently the tort of Williams’ employee did not obligate either O’Neal or Hot Mix to respond in damages.
In the instant case Amos employed and paid his employee, Holmes, and Amos directed his crew in the performance of its activities. Burns had no control nor right of control over Amos or his employees on the day of the accident. To the contrary, Amos had not relinquished the slightest control over the operation of the pulpwood truck.
Admittedly, the tort-feasor Holmes was selected, employed and paid by Amos and therefore the primary employer-employee relationship was between Amos and Holmes. The question then becomes whether, considering all of the surrounding circumstances, the relationship of Amos and Burns was that of master and servant.
Plaintiff bears the burden of proving his right to recover by a fair preponderance of evidence which burden necessarily includes proof of master and servant relationship between the actual tort-feasor and the parties sought to be held vicariously liable for his actions.
In light of all the facts, about which we find no serious dispute, we think plaintiff has failed to bear his burden but to the contrary Burns Products, Inc., and Joe D. Burns have proved that neither of them stood in the relationship of master and servant with Amos, and therefore are not liable for the injuries caused by the negligent act of an employee of Amos. It follows from this conclusion that Continental Can is likewise exonerated from liability.
For the reasons assigned the judgment appealed from is reversed, annulled and set aside insofar as it applies to Bums Forest Products Company, Inc., Joe D. Burns and Continental Can Company, Inc., and the demands of the plaintiff against these defendants are rejected at plaintiff’s costs including the cost of this appeal. As amended the judgment is affirmed.
Amended and affirmed.